FILED
2008 Jul-30  PM 12:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| OLD REPUBLIC INSURED | ) | |
| CREDIT SERVICES, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Compass Bank, for its complaint in this matter, says as follows:

### *Parties, Jurisdiction and Venue*

1.      Plaintiff, Compass Bank ("Compass"), is an Alabama corporation with its principal place of business in Birmingham, Jefferson County, Alabama.

2.      Defendant, Old Republic Insured Credit Services, Inc. ("Old Republic"), is a company incorporated outside of Alabama with its principal place of business in the State of Illinois.  At all times relevant to the claims in this Complaint, Old Republic has conducted business in the State of Alabama.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $75,000.00,

exclusive of interest and costs, and the parties in this action are citizens of different states.

4.      Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Alabama, Southern Division.

### *The Policies*

5.      On or about May 19, 2003, Compass purchased from Old Republic a "Revolving Loan Credit Insurance Policy," number Z 80 (the "Z 80 Policy"), with a policy period beginning May 1, 2003 to "remain in force continuously until cancelled," a copy of which is attached to the Complaint as Exhibit A.

6.      The Z 80 Policy's insuring agreement states that Old Republic provides coverage "against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by an Eligible Line of Credit Agreement, reported to the Company and insured hereunder." Furthermore, "[t]he coverage afforded by this Policy shall attach to a particular Loan coincident with an actual disbursement by the Assured during this Policy term pursuant to an Eligible Line of Credit Agreement."

7.      The Z 80 Policy defines "Loan" as follows:

> "Loan" means an advance of funds, or the purchase of an obligation to receive repayment of such advances made pursuant to an Eligible Line of Credit Agreement and evidenced in writing.

8.    The Z 80 Policy defines "Eligible Line of Credit Agreement" as follows:

"Eligible Line of Credit Agreement" or "Line of Credit" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

(1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower;

(2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof;

(3) Contains payment requirements meeting the following specifications: The Line of Credit shall be payable in approximately equal monthly installments based on the outstanding balance at the time of the Borrower's most recent draw under his Line of Credit. The first payment shall fall due within 45 days after that most recent draw by the Borrower. The payments shall be no less than 1/60th of the outstanding balance at the time of that draw, but in no event may the monthly payments be less than forty dollars ($40.00);

(4) Is for an amount such that the net proceeds, as defined below, of such evidence of the indebtedness plus the then unpaid net proceeds of any other loans insured by the Company made by the Assured to the individual Borrower exercising the line of credit are not in excess of $10,000.00. Specified notes for greater amounts may, nevertheless, be insured hereunder upon endorsement of this policy specifically insuring such notes; and

(5) Allows the Assured to decline to make further loans pursuant to such line of credit.

9.    The Z 80 Policy defines "Borrower" as follows:

"Borrower" means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Line of Credit Agreement and written evidences of advances thereunder.

10.    The Z 80 Policy defines "Default" as follows:

"Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Line of Credit Agreement evidencing the Loan.

11.    The Z 80 Policy defines "Loss" as follows:

"Loss" means the amount payable to the Assured by the Company as provided in paragraph 3 hereof.

12.    On or about May 19, 2003, Compass purchased from Old Republic a "Credit Insurance Policy," number U 17 (the "U 17 Policy"), with a policy period beginning May 1, 2003 to "remain in force continuously until cancelled," a copy of which is attached to this Complaint as Exhibit B.

13.    The U 17 Policy's insuring agreement states that Old Republic provides coverage "against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by an Eligible Notes, reported to the Company and insured hereunder which were made to finance the alteration, repair, conversion, improvement or modernization of real property." Furthermore, "[t]he coverage afforded by this

Policy shall attach to a particular loan coincident with an actual disbursement by the Assured of the Loan during such period."

14. The U 17 Policy defines "Loan" as follows:

"Loan" means an advance of funds, or the purchase of an obligation, evidenced by an Eligible Note, the proceeds of which have been or are to be used for the alteration, repair, conversion, improvement or modernization of real property located within the continental limits of the United States of America.

15. The U 17 Policy defines "Eligible Note" as follows:

"Eligible Note" or "Note" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

(1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower; and

(2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof; and

(3) Contains payment and maturity requirements meeting the following specifications: The Note shall be payable in approximately equal monthly installments, the first of which shall fall due within six months and the last within sixty months and 32 days from the date of the Note. If the principal income of the Borrower is derived from a seasonal operation or business, the Note may be made payable in installments corresponding with the seasonal variation in Borrower's income shown on his application for credit; provided the first installment is payable within twelve months of the date of the Note; and further provided that the sum of installments to be paid in any year subsequent to the first year shall not be greater than the proportion of the total debt which is to be paid in the first year; and further provided that a token payment is due in each off-season month; and

(4) Is for an amount such that the net proceeds, as defined below, of such note plus the then unpaid net proceeds of any other loans insured by the Company made by the Assured to the individual Borrower making the note are not in excess of $5,000.00, except that specified notes for greater amounts may be insured hereunder upon endorsement of this policy specifically insuring such notes.

16.    The U 17 Policy defines "Borrower" as follows:

"Borrower' means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Note, and whose interest in the real property to be improved is:

(1) A fee title; (2) a life estate; (3) a leasehold estate having a fixed term expiring after the maturity of the Note; or (4) an equitable interest under a contract or deed of trust to create an interest in real property of the character described in (1), (2) or (3). No such person shall be accepted by the Assured as a Borrower if such person is past due more than fifteen days as to the payment of an obligation owed the Assured or any obligation insured by the Company or is past due more than thirty days as to the payment of any other indebtedness evidenced by a note, bond or contract signed by such person and the Assured through its usual credit investigation is placed on notice of such fact or facts, unless other circumstances known to the Assured make a loan to such person a credit risk acceptable to a prudent lender.

17.    The U 17 Policy defines "Default" as follows:

"Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Note evidencing the Loan.

18.    The U 17 Policy defines "Loss" as follows:

"Loss" means the amount payable to the Assured by the Company as provided in paragraph 5 hereof.

## *Factual Allegations*

19.     On  or  about  April  23,  2007,  Compass  filed  Claim  No. 4355760000824534 with Old Republic.

20.     Without valid reason under the respective policy, Old Republic denied this claim.

21.     On  or  about  November  23,  2007,  Compass  filed  Claim  No. 4355760001087107 with Old Republic.

22.     Without valid reason under the respective policy, Old Republic denied this claim.

23.     On  or  about  December  17,  2007,  Compass  filed  Claim  No. 4355760000894230 with Old Republic.

24.     Without valid reason under the respective policy, Old Republic denied this claim.

25.     On or about December 20, 2007, Compass filed Claim No. 077-07831684 with Old Republic.

26.     Without valid reason under the respective policy, Old Republic denied this claim.

27.     On  or  about  December  21,  2007,  Compass  filed  Claim  No. 4355760000956708 with Old Republic.

28.    Without valid reason under the respective policy, Old Republic denied this claim.

29.    On or about January 25, 2008, Compass filed Claim No. 4355760001086406 with Old Republic.

30.    Without valid reason under the respective policy, Old Republic denied this claim.

31.    On or about January 31, 2008, Compass filed Claim No. 4355760000726606 with Old Republic.

32.    Without valid reason under the respective policy, Old Republic denied this claim.

33.    On or about April 4, 2008, Compass filed Claim No. 4355760000588287 with Old Republic.

34.    Without valid reason under the respective policy, Old Republic denied this claim.

35.    On or about April 7, 2008, Compass filed Claim No. 4355760000721151 with Old Republic.

36.    Without valid reason under the respective policy, Old Republic denied this claim.

37.    On or about April 23, 2008, Compass filed Claim No. 4355760001132598 with Old Republic.

38.     Without valid reason under the respective policy, Old Republic denied this claim.

39.     On or about May 8, 2008, Compass filed Claim No. 4355760001237348 with Old Republic.

40.     Without valid reason under the respective policy, Old Republic denied this claim.

41.     The Old Republic Policies state that each "loan" must meet the Company's qualifying specifications for underwriting and Company sanctioned guidelines in effect on the day that the loan was originated.

42.     Yet, in denying claims, Old Republic has utilized information developed or created after the loan was originated.

43.     Additionally, Old Republic has indicated that various underwriting criteria relied upon by Compass involved fraud and/or misrepresentations.

44.     Old Republic has presented no evidence, however, that such underwriting criteria were based on fraud and/or misrepresentations.

45.     Old Republic also claims, without any support in the Policies, that Compass has failed to report line increases in the proper manner.

46.     Compass continues to report these line increase claims the same way it always has and consistent with the Policies.

## *Count One – Breach of Contract*

47.    The allegations of paragraphs 1 through 46 above are incorporated by reference herein.

48.    Old Republic and Compass entered into valid agreements, namely the Z 80 and U 17 Policies of insurance.

49.    Compass has performed all of its obligations under the Policies, including the payment of premiums.

50.    Compass has incurred "Loss" due to the "Default" by "Borrowers."

51.    In accordance with the terms and conditions of the Z 80 Policy and the U 17 Policy, Compass presented the aforementioned claims to Old Republic.

52.    Old Republic has breached the terms and conditions of the Z 80 Policy and the U 17 Policy by refusing to cover the "Loss" under each claim presented by Compass according to the terms and conditions of the respective policies.

53.    As a proximate result of this breach, Compass has been damaged.

WHEREFORE, PREMISES CONSIDERED, Compass Bank demands judgment against Old Republic in an amount appropriate to be determined by the trier of fact, plus interest and costs.

984776.1

10

### Count Two – Declaratory Judgment

54.     The allegations of paragraphs 1 through 53 above are incorporated by reference herein.

55.     This cause of action is brought pursuant to 28 U.S.C. § 2201.

56.     Compass has incurred "Loss" due to the "Default" by "Borrowers" and is entitled to coverage under the Policies.

57.     In accordance with the terms and conditions of the Z 80 Policy and the U 17 Policy, Compass presented the aforementioned claims to Old Republic.

58.     Old Republic disputes that the Policy covers Compass's claims and has declined to cover the "Loss" under each of Compass's claims.

59.     A justiciable controversy has arisen with regard to the rights and obligations of the parties to the Policy.  Based on this dispute, it is appropriate for the Court to declare the respective rights and obligations of the parties with respect to the Policy.

WHEREFORE, PREMISES CONSIDERED, Compass Bank respectfully requests that this Court grant the following:

A.     A declaratory judgment that the Policies provide coverage for the claims tendered by Compass.

B.     A declaratory judgment that Old Republic has a duty to pay Compass for all "Loss" associated with its claims.

984776.1

11

C.    Compensatory damages in an amount to be determined by the trier of

fact, plus interest, costs and attorneys' fees.

D.    Such other, further or different relief to which Compass may be

entitled, together with the costs of this action.


_____
One of the Attorneys For Plaintiff,
Compass Bank

**OF COUNSEL:**

R. Bruce Barze, Jr. (ASB-8163-R71R)
Email: bbarze@balch.com
Daniel E. Harrell  (ASB-1540-A63H)
Email: dharrell@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

PLEASE SERVE DEFENDANT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AT THE FOLLOWING ADDRESSES:

Old Republic Insured Credit Services, Inc.
c/o Prentice Hall Corporation
33 North LaSalle Street
Chicago, Illinois  60602


Old Republic Insured Credit Services, Inc.
c/o Prentice Hall Corporation
150 South Perry Street
Montgomery, Alabama  36104


Old Republic Insured Credit Services, Inc.
c/o Alabama Department of Insurance
Commissioner Walter Bell
P.O. Box 303351
Montgomery, Alabama  36130-3351

*Compass Bank v. Old Republic*

# Exhibit A

**"Revolving Loan Credit Insurance Policy,"**
**No. Z 80, policy period beginning May 1, 2003**

No. ....Z 80..................

**Renewal of**
**Policy No.** ...........................

# REVOLVING LOAN
# CREDIT INSURANCE POLICY



## OLD REPUBLIC
### Insurance Company

*GREENSBURG, PENNSYLVANIA*
*A STOCK COMPANY*
(hereinafter called the Company)

In consideration of the stipulations and provisions hereinafter set forth and of the premium hereinafter specified, does insure

### COMPASS BANK

a corporation organized under the laws of ......ALABAMA........................., hereinafter called the Assured, whose address is ......................Homewood, Alabama........................, against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by an Eligible Line of Credit Agreement, reported to the Company and insured hereunder.

This Policy shall be effective from the......1........day of......May...................., 20....03........., at 12:01 A.M. at the place of business of the Assured and shall remain in force continuously until cancelled. The coverage afforded by this Policy shall attach to a particular Loan coincident with an actual disbursement by the Assured during this Policy term pursuant to an Eligible Line of Credit Agreement.

The Assured shall pay the Company a monthly premium of......$.110.........% of the Average Daily Balance (as hereinafter defined) of any Loan reported for insurance, which premium shall be payable within fifteen (15) days after the close of each month during which this policy is in effect.

All Loans made by the Assured pursuant to a Line of Credit Agreement shall be reported to the Company for insurance within fifteen (15) days after the close of the month in which such Loans are made or purchased. The reporting form shall be as prescribed by the Company.

The Company's liability for loss with respect to any Insured Loan or Loans to any particular individual Borrower who defaults to the Assured hereunder shall be limited to ten thousand dollars ($10,000.00) unless a higher limit is specifically approved by the Company and is endorsed hereon. The Company's maximum cumulative liability for Loss under this Policy is further limited to ten percent (10%) of the sum of the highest outstanding balances of Loans insured hereunder made by the Assured during the twelve (12) month period immediately following the effective date of this Policy and during each succeeding twelve (12) month period in which this Policy is in effect. The Company's maximum liability under this Policy shall in no event exceed $.10,000,000................... during each such twelve (12) month period.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated which are hereby made part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

IN WITNESS WHEREOF, the Company has duly executed these presents; but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Countersigned this ......*19 +n*.........................

day of.....*MAY*...................., 20.*03*......                            *President*

**OLD REPUBLIC INSURANCE COMPANY**

By..................................................                            *Secretary*
Authorized Representative

ICS-R1                                                                         (11/99)

## PROVISIONS AND STIPULATIONS

1. **DEFINITIONS**

   a. "Loan" means an advance of funds, or the purchase of an obligation to receive repayment of such advances made pursuant to an Eligible Line of Credit Agreement and evidenced in writing

   b. "Eligible Line of Credit Agreement" or "Line of Credit" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

   (1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower;

   (2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof;

   (3) Contains payment requirements meeting the following specifications: The Line of Credit shall be payable in approximately equal monthly installments based on the outstanding balance at the time of the Borrower's most recent draw under his Line of Credit. The first payment shall fall due within 45 days after that most recent draw by the Borrower. The payments shall be no less than 1/60th of the outstanding balance at the time of that draw, but in no event may the monthly payments be less than forty dollars ($40.00);

   (4) Is for an amount such that the net proceeds, as defined below, of such evidence of the indebtedness plus the then unpaid net proceeds of any other loans insured by the Company made by the Assured to the individual Borrower exercising the line of credit are not in excess of $10,000.00. Specified notes for greater amounts may, nevertheless, be insured hereunder upon endorsement of this policy specifically insuring such notes; and

   (5) Allows the Assured to decline to make further loans pursuant to such line of credit.

   c. "Borrower" means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Line of Credit Agreement and written evidences of advances thereunder.

   d. "Payment" or "Installment" means a deposit by the Borrower with the Assured of funds which represent the full or partial repayment of a Loan according to the terms of the Line of Credit Agreement evidencing such Loan.

   e. "Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Line of Credit Agreement evidencing the Loan.

   f. "Date of Default" means the earliest date upon which an installment or payment was due which was not paid by the Borrower according to the terms of the Note.

   g. "Loss" means the amount payable to the Assured by the Company as provided in paragraph 5 hereof.

   h. "Net Proceeds" means the amount of the advance of funds actually made or the purchase price of an obligation giving the holder the right to receive repayment of such advances, exclusive of finance charges, fees, and other deductions.

   i. "Average Daily Balance" of a Loan which changed in amount during the month shall be calculated by multiplying each amount of the Loan by the number of days that amount was outstanding, adding the products of such multiplications and dividing the total by the number of days in the month.

2. **CONDITIONS PRECEDENT TO RECOVERY**

   Prior to making a Loan, the Assured shall obtain a dated credit application fully completed and executed by the Borrower. The credit application supplemented by such other information as the Assured deems necessary, must, in the judgment of the Assured, clearly show the Borrower to be solvent, with reasonable ability to repay the Loan, and in all other respects a reasonable credit risk. If, after the Loan is made, the Assured discovers any material misstatements in the credit application, or misuse of the proceeds of the Loan by the Borrower, the Assured shall promptly report such discovery to the Company.

   The Assured shall exercise due diligence in disbursing proceeds of Loans and in effecting collections and shall service its Loans in accordance with acceptable practices of prudent lending institutions.

   Claim may be made after Default provided written demand has been made on the Borrower for the full unpaid balance of the then outstanding balance of the Line of Credit. The Company reserves the right to require the Assured to reduce the obligation to judgment.

3. **NOTICE OF DEFAULT AND FILING OF CLAIMS FOR LOSS**

   Should a Default continue for a period of ninety (90) days, notice thereof must be filed with the Company monthly thereafter on the form prescribed by the Company until the Default is cured or a Claim for Loss is filed. A Claim for Loss may be filed as to an individual Loan at any time after Default but in no event later than six (6) months after Default unless the Company shall grant an extension of the claim period in writing. Claims shall be filed on Proof of Loss forms provided by the Company, which shall include an assignment of the Assured's interest in the defaulted Note to the Company or such other person as may be designated by the Company as assignee.

4. **PAYMENT OF LOSS**

   All adjusted claims shall be paid or made good within thirty (30) days after presentation of satisfactory evidence of Loss to the Company.

5. **LIMIT OF LOSS**

   In addition to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Line of Credit or the maximum amount authorized by the Line of Credit Agreement, whichever is lesser, less the unearned discount thereon, plus:

   a. uncollected earned interest to date of Default and interest at the rate of 4 % per annum from the

date of Default to the date of payment of Loss; plus

b.  uncollected court costs (including fees paid for issuing, serving and filing summons); plus

c.  attorneys' fees actually paid, not exceeding:

(1) 25 percent of the amount collected by the attorney on the defaulted Line of Credit provided the Assured does not waive its claim against the Borrower for such fees; plus

(2) $100.00 where judgment is obtained;

less any part of the foregoing amounts which the Assured has collected from others, or which the Assured can collect from a reserve or holdback funds in its hands.

## 6.  SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to all of the Assured's rights of recovery against the Borrower and any other person or organization liable under the terms of the defaulted Line of Credit, and against any reserve or holdback funds in its hands, and the Assured shall execute and deliver at the request of the Company instruments and papers and do whatever else is necessary to transfer, assign and secure such rights. The Assured shall do nothing after Loss to prejudice such rights, and the execution by the Assured of a release or waiver of the right to collect the unpaid balance of a Line of Credit shall equally release the Company from any further obligation under this Policy as to said Line of Credit, anything in this Policy to the contrary notwithstanding.

## 7.  TRANSFER OR PREPAYMENT OF LOANS REPORTED FOR INSURANCE

All liability under this Policy with respect to any individual Loan shall terminate upon sale or transfer (including without limiting the generality of application of this section, transfers pursuant to, or resulting from merger or consolidation of the Assured with any other corporation or company) of such Loan, or the Line of Credit Agreement evidencing same, to any transferee not holding a similar Policy issued by the Company.

Such sales or transfers may be made to a transferee holding a similar Policy issued by the Company only with the prior written approval of the Company. In the event of such a sale or transfer, the continuing liability of the Company to the transferee with regard to the Loan or Loans sold or transferred shall be ten percent of the aggregate unpaid balance of the net proceeds of such Loan or Loans at the time of transfer or sale, and the aggregate limit of liability of the Company to the Assured hereunder shall be reduced by an equal amount.

In no event shall the Company refund any premium to the Assured upon the sale or transfer of any Loan or Loans insured hereunder.

Nothing contained herein shall be construed to prevent the pledging of such loans, or the Line of Credit Agreements evidencing the same, as collateral security under a bona fide loan agreement.

## 8.  REPORTS AND EXAMINATION

The Company may at any time call upon the Assured for such reports as it may deem necessary and may inspect the books or the accounts of the Assured as they pertain to the Lines of Credit reported for insurance hereunder. All Lines of Credit reported to the Company for insurance hereunder shall be identified by methods satisfactory to the Company on the records of the Assured.

## 9.  AMENDMENTS

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy. The terms of this Policy may be waived or changed only after written approval of the Company and by an endorsement signed on behalf of the Company by its President, Vice President or Secretary and countersigned by a duly authorized representative of the Company.

## 10. MISREPRESENTATION AND FRAUD

The Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a Loss, or if the Assured shall make any claim which is false or fraudulent either in amount or otherwise.

## 11. OTHER INSURANCE

If at the time of Loss or Default there is any other valid and collectible insurance which would attach if this insurance had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

## 12. ASSIGNMENT OF POLICY

This Policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

## 13. SUIT AGAINST COMPANY

No suit, action or proceeding for the recovery of any claim under this Policy shall be instituted or sustainable in any court of law or equity unless Proof of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within twelve (12) months next after Default; provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

## 14. CANCELLATION

This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than five (5) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the

policy period. Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

If the Company cancels this Policy, Loans made prior to the effective date of cancellation shall remain insured hereunder upon payment of the monthly premium on such Loans until such Loans are repaid in full or are increased by a new Loan. If the Assured cancels this Policy, the Assured shall continue to pay the monthly premium on all Loans made prior to the effective date of cancellation until such Loans are paid in full or are increased by a new Loan.

### 15. CONFORMITY TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.



OLD REPUBLIC
Insurance Company

GREENSBURG, PENNSYLVANIA

(A STOCK COMPANY)

ISSUED TO
COMPASS BANK
Homewood, Alabama

CREDIT INSURANCE
POLICY

No. _____ Z 80

Renewal of
Policy No. _____

ICS-R1

(11/99)

*Compass Bank v. Old Republic*

# Exhibit B
## "Credit Insurance Policy,"
## No. Z 17, policy period beginning May 1, 2003

No. U  17 ...........................

**Renewal of**
**Policy No.** ...........................

# CREDIT INSURANCE POLICY



## OLD REPUBLIC
### Insurance Company

*GREENSBURG, PENNSYLVANIA*
*A STOCK COMPANY*
(hereinafter called the Company)

In consideration of the stipulations and provisions hereinafter set forth and of the premium hereinafter specified, does insure

### COMPASS BANK

.......................................................................................................................................................
a corporation organized under the laws of ..... ALABAMA ........................., hereinafter called the Assured, whose address is ........................... Homewood, Alabama ...............................................................,
against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by Eligible Notes, reported to the Company and insured hereunder which were made to finance the alteration, repair, conversion, improvement or modernization of real property.

This Policy shall be effective from the ............... 1 day of ......... May ........................, 20 ..... 03 ..., at 12:01 A.M. at the place of business of the Assured and shall remain in force continuously until cancelled. The coverage afforded by this Policy shall attach to a particular loan coincident with the actual disbursement by the Assured of the Loan during such period.

The Assured shall pay the Company a premium calculated upon the entire term of the Note at the rate of ... 1.10 ...........% per annum of the net proceeds (as hereinafter defined) of any Loan reported for insurance, which premium shall be payable within 15 days after the close of the month in which the Loan is made or purchased. In computing the premium, no charge shall be made for a fractional period of a month consisting of 15 days or less and a charge for a full month shall be made for a fractional period of a month consisting of more than 15 days.

Loans shall be reported to the Company for insurance on the form prescribed by the Company within 15 days after the close of the month in which the Loan is made or purchased.

The Company's liability for loss with respect to any Insured Loan or Loans to an individual Borrower who defaults to the Assured hereunder shall be limited to five thousand dollars ($5,000.00) unless a higher limit is specifically approved by the Company and is endorsed hereon. The Company's maximum cumulative liability for Loss under this Policy is further limited to ten percent (10%) of the Aggregate net proceeds of loans insured hereunder made by the Assured during the 12 month period immediately following the effective date of this Policy and during each succeeding 12 month period in which this Policy is in full force and effect. The Company's maximum liability under this Policy shall in no event exceed $. 30,000, 000 during each such 12 month period.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated which are hereby made part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

IN WITNESS WHEREOF, the Company has duly executed these presents; but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Countersigned this ............... 19th ...........................

day of ..... MAY ..........................., 20.03....

**OLD REPUBLIC INSURANCE COMPANY**

By ...........................................................

Authorized Representative

_____
*President*

_____
*Secretary*

ICS-1C—Rev. 8/59

(11/99)

## PROVISIONS AND STIPULATIONS

### 1. DEFINITIONS

a. "Loan" means an advance of funds, or the purchase of an obligation, evidenced by an Eligible Note, the proceeds of which have been or are to be used for the alteration, repair, conversion, improvement or modernization of real property located within the continental limits of the United States of America.

b. "Eligible Note" or "Note" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

(1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower; and

(2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof; and

(3) Contains payment and maturity requirements meeting the following specifications: The Note shall be payable in approximately equal monthly installments, the first of which shall fall due within six months and the last within sixty months and 32 days from the date of the Note. If the principal income of the Borrower is derived from a seasonal operation or business, the Note may be made payable in installments corresponding with the seasonal variation in Borrower's income shown on his application for credit; provided the first installment is payable within twelve months of the date of the Note; and further provided that the sum of installments to be paid in any year subsequent to the first year shall not be greater than the proportion of the total debt which is to be paid in the first year; and further provided that a token payment is due in each off-season month; and

(4) Is for an amount such that the net proceeds, as defined below, of such note plus the then unpaid net proceeds of any other loans insured by the Company made by the Assured to the individual Borrower making the note are not in excess of $5,000.00, except that specified notes for greater amounts may be insured hereunder upon endorsement of this policy specifically insuring such notes.

c. "Borrower" means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Note, and whose interest in the real property to be improved is:

(1) A fee title; (2) a life estate; (3) a leasehold estate having a fixed term expiring after the maturity of the Note; or (4) an equitable interest under a contract or deed of trust to create an interest in real property of the character described in (1), (2) or (3). No such person shall be accepted by the Assured as a Borrower if such person is past due more than fifteen days as to the payment of an obligation owed the Assured or any obligation insured by the Company or is past due more than thirty days as to the payment of any other indebtedness evidenced by a note, bond or contract signed by such person and the Assured through its usual credit investigation is placed on notice of such fact or facts, unless other circumstances known to the Assured make a loan to such person a credit risk acceptable to a prudent lender.

d. "Payment" or "Installment" means a deposit by the Borrower with the Assured of funds which represent the full or partial repayment of a Loan according to the terms of the Note evidencing such Loan.

e. "Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Note evidencing the Loan.

f. "Date of Default" means the earliest date upon which an installment or payment was due which was not paid by the Borrower according to the terms of the Note.

g. "Loss" means the amount payable to the Assured by the Company as provided in paragraph 5 hereof.

h. "Net Proceeds" means the amount of the loan actually made or the purchase price of the note, exclusive of finance charges, fees, and other deductions.

### 2. CONDITIONS PRECEDENT TO RECOVERY

Prior to making a Loan, the Assured shall obtain a dated credit application fully executed by the Borrower. The credit application supplemented by such other information as the Assured deems necessary, must, in the judgment of the Assured, clearly show the Borrower to be solvent, with reasonable ability to repay the Loan, and in other respects a reasonable credit risk. If, after the Loan is made, the Assured discovers any material misstatements in the credit application, or misuse of the proceeds of the Loan by the Borrower, the Assured shall promptly report such discovery to the Company.

The Assured shall exercise due diligence in disbursing proceeds of loans and in effecting collections and shall service its Loans in accordance with acceptable practices of prudent lending institutions.

All payments received on account of the Note, except late charges, must be applied to the maturing installments in their order, except that any sum received by the Assured in excess of three advanced monthly payments shall be credited to the final installments in the absence of specific written instructions from the Borrower to do otherwise.

Claim may be made after Default provided written demand has been made on the Borrower for the full unpaid balance of the Note. The Company reserves the right to require the Assured to reduce the Note to judgment subject to the limitations of the terms of the Note.

### 3. NOTICE OF DEFAULT AND FILING OF CLAIMS FOR LOSS

Should a Default continue for a period of 90 days, notice thereof must be filed with the Company monthly thereafter, on the form prescribed by the Company until the Default is cured or a claim of Loss filed. A claim for Loss may be filed as to an individual Loan at any time after Default but in no event later than six months after Default unless the Company shall grant an extension of the claim period in writing. Claims shall be filed on Proof of Loss forms provided by the Company, which shall include an assignment of the Assured's interest in the defaulted Note to the Company or such other person as may be designated by the Company as assignee.

**4. PAYMENT OF LOSS**

All adjusted claims shall be paid or made good within thirty days after presentation of satisfactory evidence of Loss to the Company.

**5. LIMIT OF LOSS**

In addition to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Note or of the actual purchase price thereof, whichever is lesser, less the unearned discount thereon, plus

  a. uncollected earned interest to date of Default and interest at the rate of 4% per annum from the date of Default to the date of presentation of Proof of Loss; plus

  b. uncollected court costs (including fees paid for issuing, serving and filing summons); plus

  c. attorneys' fees actually paid, not exceeding:

    (1) 25 percent of the amount collected by the attorney on the defaulted Note provided the Assured does not waive its claim against the Borrower for such fees; plus

    (2) $25.00 or 15 percent of the balance due on the Note, whichever is the lesser, if a judgment is secured by suit, or $10.00 or 15 percent of the balance due on the Note, whichever is the lesser, if a judgment is secured by confession after default; plus

    (3) $50.00 plus 5 percent of the balance due on the Note as an additional fee where the action is contested and judgment is obtained;

less any part of the foregoing amounts which the Assured has collected from others, or which the Assured can collect from a reserve or holdback funds in its hands.

**6. SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to all of the Assured's rights of recovery against the Borrower and any other person or organization liable under the terms of the defaulted Note and against any reserve or holdback funds in its hands, and the Assured shall execute and deliver at the request of the Company instruments and papers and do whatever else is necessary to transfer, assign and secure such rights. The Assured shall do nothing after Loss to prejudice such rights, and the execution by the Assured of a release or waiver of the right to collect the unpaid balance of a Loan shall equally release the Company from any further obligation under this Policy as to said Loan, anything in this Policy to the contrary notwithstanding.

**7. TRANSFER OR PREPAYMENT OF LOANS REPORTED FOR INSURANCE**

All liability under this Policy with respect to any individual loan shall terminate upon sale or transfer (including without limiting the generality of application of this section, transfers pursuant to, or resulting from merger or consolidation of the Assured with any other corporation or company) of such loan, or the note evidencing same, to any transferee not holding a similar Policy issued by the Company.

Such sales or transfers may be made to a transferee holding a similar Policy issued by the Company only with the prior written approval of the Company. In the event of such a sale or transfer, the continuing liability of the Company to the transferee with regard to the loan or loans sold or transferred shall be ten percent of the aggregate unpaid balance of the net proceeds of such loan or loans at the time of transfer or sale, and the aggregate limit of liability of the Company to the Assured hereunder shall be reduced by an equal amount.

In no event will the Company refund any premium to the Assured upon the sale or transfer of any loan or loans insured hereunder.

Nothing contained herein shall be construed to prevent the pledging of such loans, or the notes evidencing the same, as collateral security under a bona fide loan agreement.

In the event that the Borrower shall prepay an eligible loan for which the required premium has been paid by the Assured to the Company, upon receipt of a report of such prepayment and application for premium refund on the form prescribed by the Company, the Company shall return to the Assured a premium refund calculated according to the sum-of-the-digits method, and the aggregate cumulative liability of the Company hereunder shall be reduced by ten percent of the original net proceeds of said loan.

**8. REPORTS AND EXAMINATION**

The Company may at any time call upon the Assured for such reports as it may deem necessary and may inspect the books or the Accounts of the Assured as they pertain to the Loans reported for insurance hereunder. All Loans reported to the Company for insurance hereunder shall be identified by methods satisfactory to the Company, on the records of the Assured.

**9. AMENDMENTS**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy. The terms of this Policy may be waived or changed only after written approval of the Company and by an endorsement signed on behalf of the Company by its President, Vice President or Secretary and countersigned by a duly authorized representative of the Company.

**10. MISREPRESENTATION AND FRAUD**

The Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a loss, or if the Assured shall make any claim which is false or fraudulent either in amount or otherwise.

**11. OTHER INSURANCE**

If at the time of Loss or Default there is any other valid and collectible insurance which would attach if this

insurance had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

## 12. ASSIGNMENT OF POLICY

This Policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

## 13. SUIT AGAINST COMPANY

No suit, action or proceeding for the recovery of any claim under this Policy shall be instituted or sustainable in any court of law or equity unless Proof of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within twelve months next after Default; provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

## 14. CANCELLATION

This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than five days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

Cancellation of this Policy shall not affect the insurance privilege of the Assured with respect to any loan previously reported for insurance.

## 15. CONFORMITY TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.



No. U 17

Renewal of
Policy No.

OLD REPUBLIC
Insurance Company

GREENSBURG, PENNSYLVANIA

(A STOCK COMPANY)

ISSUED TO
COMPASS BANK
Homewood, Alabama

CREDIT INSURANCE
POLICY

(11/99)

ICS-1C—Rev. 8/69